NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

MARGARET JOHNSON, PETITIONER, v. H. GASNER, INC.,
GLENS FALLS INDEMNITY CO., RESPONDENT.

Decided December 16, 1940.

For the petitioner, *David Roskein.*

For the respondent, *Cox & Walburg* (by *Arthur Mead*).

A formal petition having been filed in the above matter on September 12th, 1939, claiming compensation under and by virtue of *R. S.* 1937, *ch.* 34:15, and an answer having been filed and the parties appearing before me at Newark on November 14th and November 18th, 1940, and testimony being taken in my presence and in the presence of counsel, I find and determine as follows:

It was stipulated and agreed between the parties that the testimony adduced under the petition filed herein should be considered as the testimony adduced under a certain other claim petition filed by Edward Johnson, deceased husband of the within petitioner, on September 12th, 1939. The claim petition for the within petition is number 49728. The claim petition filed by Edward Johnson is 46349. It was alleged that Edward Johnson on October 7th, 1937, in the course of his regular employment with the respondent, had occasion to repair an icebox and that while doing so he inhaled sulphur dioxide which ultimately caused his death.

A William Sullivan testified on behalf of the petitioner as to the occurrence of this event although he did not know of his own knowledge that this had actually occurred to Edward

but that he had spoken to Edward as Edward came back to work and the event was recited to him. The decedent remained out of work for a period of approximately two weeks following the episode and then returned to his regular work as a service man doing his regular work. After working approximately two or three weeks upon his return, his employment was discontinued because of lack of business and the decedent obtained employment at a place known as the Hill Top Tavern where he worked steadily thereafter until the latter part of January, 1939.

The petitioner testified to this continuation of employment of the decedent and stated that her husband, the decedent, did not complain or say very much. The first night after the accident he coughed a little but thereafter he stated he was feeling all right and after a few weeks he appeared to be in good health. All during the time he was working at the tavern he appeared to be well and made no complaints until the early part of 1939 when he began looking white and seemed to be a little weak. He then went to a doctor. Later he was referred to a sanatorium and subsequently died.

A Mrs. Theiss, a sister-in-law of Edward, stated that she was present at her mother's home the day following the accident and that Edward seemed to be sick for that day. He stayed home for two weeks and then returned to work. She stated that he complained of irritation in his throat and he appeared to have a cough which was more in his throat than anywhere else.

On behalf of the petitioner, Dr. Champlin stated that he had occasion to examine the decedent as a food handler in Bloomfield and on his examination found no pulmonary condition, no signs of tuberculosis and had a negative sputum test. Also on December 28th, 1938, he found no pulmonary condition and so reported. His reports and the health cards were placed in evidence. He also had occasion to refer the decedent to the Orange Memorial Hospital in December, 1937, when the decedent offered himself as a blood donor for a member of the family. The decedent was accepted as a blood donor after a thorough physical examination. Dr. Champlin then saw the decedent in the early part of 1939 at which time

he referred him to Dr. Repas and subsequently the decedent was entered in the Verona Sanatorium January of 1939 and discharged July, 1939. The decedent was not under treatment then until April, 1940, when he was again sent to the Verona Sanatorium and where he died April 26th, 1940, of tubercular meningitis.

The doctor when presented with all of the facts as a hypothetical composition, stated by reason of the facts themselves there should be some connection between the exposure to sulphur dioxide and the illness which the decedent had and his subsequent death. The death certificate was placed in evidence. The petitioner produced other documentary and oral testimony.

On behalf of the respondent, Dr. Koppel testified from numerous examinations made by him. These examinations were made during the lifetime of the decedent. He stated that in his opinion the decedent did not suffer any pulmonary condition as a result of the episode of October 7th, 1937. He stated that there appeared to be no pathological process evidenced either clinically or on pathological examinations made shortly after the alleged accident and for a period of at least two years thereafter. He admitted, however, that by reason of the contact with sulphur dioxide there might have been a throat irritation as evidenced by the cough described by the lay witnesses. This condition he characterized as possibly being a laryngitis or tracheitis. He further conceded that such a condition although it is not a pulmonary condition might cause a permanent functional disability which he would measure to the extent of approximately twenty-five per cent. of total disability.

Dr. Pollak, a recognized expert in the field of pulmonary diseases, testified from examinations made by him and a study of the medical reports and the X-rays. He expressed his opinion there was no causal connection between the death and the episode of October 7th, 1937. He stated that X-rays had been taken a few days after that episode and these X-rays showed an old healed tubercular lesion in the left upper lobe. He stated that there was no active condition manifest either on clinical signs or in the X-ray pictures and that if there

were any connection between the episode and a pulmonary condition it certainly would have shown some active condition. The fact was that there was no active condition shown either clinically or otherwise. He conceded, however, that sulphur dioxide is an irritating vapor or gas and that it might cause a tracheitis which is purely local condition brought about by the irritation of the membranes. He did not attempt to estimate the extent of such a condition if it did exist.

I am satisfied from a consideration of the testimony adduced before me with respect to the claim made herein, that the decedent's death from tubercular meningitis was not the result of the episode of October, 1937. There appears to have been no clinical or other substantial medical evidence that there was activation of a pulmonary condition shortly after the accident or for that matter for a period covering several years. The death certificate placed in evidence further confirms the fact that the doctor who attended the decedent at the Essex County Sanitarium and who must have had before him the entire case history during that attendance in certifying to the cause of death did not certify that death was in any way caused by any accident or occupational episode.

In consideration of my finding that the decedent's death was not the result of the alleged accident either directly or indirectly, it is, therefore, * * * ordered, that the petition herein be dismissed and judgment be entered in favor of the respondent.

JOHN C. WEGNER,
*Deputy Commissioner.*